*188 KAREN LECRAFT HENDERSON, Circuit Judge,
dissenting in part.
In reversing the district court’s determination at sentencing regarding Luther Mellen’s responsibility for the value of all of the stolen goods that entered the Mellen house, the majority has confused the bonds of matrimony with the conduct of eo-eon-spirators. Luther Mellen (Luther) was convicted of conspiracy to defraud the government not because he married Elizabeth Mellen but because he decided willfully and knowingly to participate in the criminal conspiracy she directed. Despite my brethren’s apparent sympathy for Luther’s accommodating marital attitude,[1] the fact that Luther may merely have wanted to please his wife[2] does not alter the well-established law governing the scope of a co-conspirator’s “relevant conduct” under the United States Sentencing Guidelines (U.S.S.G. or Guidelines). In describing Luther’s culpability as guilt by association rather than as the common accountability of a co-conspirator, I believe the majority makes two mistakes: first, it fails to apply the correct standard of review to the trial court’s critical finding of fact, a finding anchored by the trial evidence; second, it misapplies the law regarding a co-conspirator’s “relevant conduct” under the Guidelines. Accordingly, while I join in Parts I, II, III.B, III.C and IV of the majority opinion, I dissent from Part III.A.
The Guidelines authorize the district court to include in a co-conspirator’s “relevant conduct” “all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity.” U.S.S.G. § lB1.3(a)(l)(B) (2000). The Commentary instructs the trial court to “determine the scope of the criminal activity the particular defendant agreed to jointly undertake” and to consider “all reasonably foreseeable quantities of contraband that were within the scope, of the criminal activity that he jointly undertook.” U.S.S.G. § 1B1.3 cmt. n. 2 (2000). The issue, then, as the majority correctly pinpoints, is the scope of the conspiratorial agreement between Luther and his wife, Elizabeth. To determine scope the sentencing court must decide whether the evidence established a single conspiracy of which the defendant was a part or multiple conspiracies, only some of which the defendant took part in. United States v. Childress, 58 F.3d 693, 722 (D.C.Cir.1995). The determination of scope is the responsibility of the trial court. United States v. Edmond, 52 F.3d 1080, 1105 (D.C.Cir. 1995) (“[T]he logic of [the precedent] requires the District Court, not us, to determine the proper scope of agreement.... ”). If the trial court fails to make findings regarding the scope of a defendant’s involvement in a conspiracy, we ordinarily remand the case to permit it to do so. Childress, 58 F.3d at 726; Edmond, 52 F.3d at 1105; United States v. Anderson, 39 F.3d 331, 359 (D.C.Cir.1994); United States v. Saro, 24 F.3d 283, 290-92 (D.C.Cir.1994).
Here the district court did make the crucial finding as to the scope of the conspiracy at the sentencing hearing. After considering the arguments of counsel, the trial evidence and the pre-sentence report, the trial judge determined that Luther’s culpability encompassed all of the property that flowed through the Mellen house, concluding, “$225,582.63, is indeed the value of the property that Mr. Mellen is responsible for in the criminal activity, because he knew that the property was there. He knew of his wife’s involvement in this scheme. I have no doubt about that what *189 soever.” Sentencing Tr., Aug. 5, 2003 [1:30 PM] at 18. The majority decides that this finding of fact is subject to the “due deference” standard of review, citing United States v. Jackson, 161 F.3d 24 (D.C.Cir.1998) (“[A] district court’s application of the Guidelines to the facts must be given ‘due deference...Maj. Op. at 183. I respectfully disagree that “due deference” is the correct standard of review. The trial judge made an unvarnished finding of fact which we do not disturb unless it is “clearly erroneous.” See United States v. (Elizabeth) Mellen, 89 Fed.Appx. 268 (D.C.Cir.2004) (“[I]n reviewing sentences the court ... ‘shall accept the findings of fact of the district court unless they are clearly erroneous....’” (quoting 18 U.S.C. § 3742(e))); see also United States v. Spriggs, 102 F.3d 1245, 1262 (D.C.Cir.1996) (per curiam). The district court first found that Luther participated in the conspiracy with respect to all of the goods that passed through the Mellen house. It then decided how to apply section 1B1.3 of the Guidelines. Childress, 58 F.3d at 722 (scope of conspiratorial participation “depends on factual findings” (internal quotation marks omitted)).
The record here manifests that the trial court’s factual finding as to the scope of Luther’s involvement is anything but clearly erroneous. Luther was convicted of conspiracy to defraud the government by “causing Elizabeth C. Mellen ... to obtain computers, telephones, cameras, [and] other electronic equipment ... for the personal use of the coconspirators.” Grand Jury Indictment (June 17, 1999) at 7. Some of the goods stolen as part of that conspiracy were delivered to the Mellen house to be distributed to Luther’s wife’s relatives. Other goods were in use or in plain view in the Mellen house. Trial Tr., Oct. 28, 2002 [A.M.], at 91-108.[3] Luther was present at times when some of the goods were distributed to other family members. Trial Tr., October 30, 2002 [A.M.], at 6.[4] Although the district court’s finding is terse, I believe that necessarily implied in its words is the finding that Luther, knowing of his wife’s fraudulent activity taking place in their house, did nothing to disassociate himself from it.[5] After all, the trial judge heard the same evidence the jury had in convicting. Lu *190 ther and, having heard it, he had “no doubt ... whatsoever” of Luther’s participation in the conspiracy.[6] The court even allowed for the testimony about keeping Luther “in the dark” by limiting Luther’s responsibility to the goods delivered to the house— some $225,000 worth' — as opposed to the entire $365,000 worth of goods involved in the fraud.[7] Having made a permissible finding as to scope, the trial judge’s application of the Guidelines is unremarkable and plainly worthy of “due deference”: it was reasonably foreseeable to Luther that all of the goods delivered to and passing through the house in which he resided furthered the conspiracy of which he was a part.
To support its conclusion the majority cites several cases involving circumstances in which a defendant has been deemed a co-conspirator based on activities taking place in his house. See United States v. Brito, 136 F.3d 397, 409 (5th Cir.1998); United States v. Ronald Jenkins, 78 F.3d 1283, 1286 (8th Cir.1996); United States v. Rice, 1992 WL 240686 at *5 (4th Cir.1992) (unpublished opinion); cf. United States v. Morillo, 158 F.3d 18, 23-24 (1st Cir. 1998). These cases provide more support for the proposition that the entire amount of property passing through the Mellen house was reasonably foreseeable to Luther than they do for the majority’s more limited view of “foreseeability.” First, each of these cases involved a sufficiency of the evidence challenge to a conspiracy conviction, not a challenge to the determination of “relevant conduct” at sentencing where the applicable burden of proof is simply a preponderance of the evidence. United States v. Stover, 329 F.3d 859, 871 (D.C.Cir.2003). Moreover, each of the Brito, Jenkins and Rice defendants, like Luther, had participated in the conspiracy beyond merely acquiescing in the use of his house. Brito, 136 F.3d at 409 (defendant “actively participated in the storage of marihuana”); Ronald Jenkins, 78 F.3d at 1286 (defendant “assisted in the accounting of drug proceeds”); Rice, 1992 WL 240686 at *6 (evidence sufficient to infer defendant’s participation in the conspiracy). In Morillo, another challenge to a conspiracy conviction, the court reversed the conviction because there was “no evidence of any involvement [by the defendant] in any other aspect of the conspiracy” aside from lending his apartment to the conspirators. Morillo, 158 F.3d at 23. That is not the case here. Even more distinguishable, the defendant in Morillo no longer lived in the apartment when the conspiratorial acts occurred there. Id. at 24. Finally, unlike the Morillo court, we are affirming Luther’s conspiracy conviction.
*191 The majority also attempts to distinguish our own precedent of United States v. Sylvia Jenkins, 928 F.2d 1175 (D.C.Cir. 1991). Jenkins lived with her son and was convicted along with him and others of conspiracy to possess cocaine. There was no evidence of her involvement in the conspiracy other than her residing in the house (which she owned) where the cocaine was seized and the discovery of ammunition in her bedroom. We declared that the “natural inference is that those who live in a house know what is going on inside, particularly in the common areas.” Id. at 1179. Sylvia Jenkins’s possession of ammunition permitted the inference that she was involved in the drug conspiracy and we affirmed her conviction. Id. Here Luther’s participation in the conspiracy— obtaining his son’s laptop — permits the same inference with respect to the other goods delivered to the Mellen house. The majority is right to distinguish Jenkins but for the wrong reason. Jenkins involved a conspiracy conviction, not a sentencing calculation. The majority’s reluctance “to expand [Jenkins ] to cover this ease,” Maj. Op. at 186, is therefore unfounded: if the government “ ‘just barely’ made its case” at trial to prove Jenkins’s guilt beyond a reasonable doubt, id. (quoting Jenkins), it requires no expansion to affirm the trial court’s “relevant conduct” determination regarding Luther supported by the lesser preponderance of the evidence standard applicable at sentencing.
Moreover, “a conspiracy can be inferred from a combination of close relationships or knowing presence and other supporting circumstantial evidence.” Brito, 136 F.3d at 409. The majority minimizes the evidence of the closeness of Luther and Elizabeth’s marriage as manifesting a weakness in the government’s position, Maj. Op. at 185, and ignores the other circumstantial evidence linking Luther to the goods passing through the house, including Luther’s request that Elizabeth obtain Motorola two-way radios for their use, coupled with his presence at a family gathering where Elizabeth distributed similar radios to her relatives, the many times when driving to or from work together that Luther and Elizabeth retrieved stolen goods from Elizabeth’s sister’s vehicle, as well as the sheer quantity of goods recovered from throughout the house on the day of the police raid.[8]
In its decision to limit Luther’s involvement, the majority assumes without discussion that there were multiple conspiracies at work: one between Elizabeth and Luther to defraud the government of the laptop obtained for Luther’s son; another between Elizabeth and Luther to defraud the government of electronics for their personal use at their house; another involving the distribution of goods from their house- — as well as the storage of goods there — of which Luther was not a part; and still others of which Luther was not a part in which no goods passed through the house. See Maj. Op. at 184. Although the record may permit such an assumption, it does not require it. The majority treats the record as if it were insufficient as a matter of law to hold Luther accountable for all of the goods that passed through the house. Instead of allowing the district *192 court on remand to “spell out” its findings as to the scope of Luther’s involvement, Childress, 58 F.3d at 722, the majority erroneously constrains the district court’s role as fact-finder.[9]
Unlike the federal tax code, the criminal law permits neither a marriage penalty nor a marriage bonus. See Joint Committee on Taxation, Description of the Marriage Tax Penalty Relief Act of 2000, JCX-3-00 (Jan. 31, 2000). The majority has handed Luther the equivalent of a refund check. It makes the hyperbolic assertion that holding Luther accountable for all of the goods distributed from the Mellen house “threatens to turn all spouses into co-conspirators because of their agreement to marry — not because of their agreement to participate in a particular conspiracy.” Maj. Op. at 187. Luther was a convicted co-conspirator, not an “innocent spouse.” At sentencing, the government must “proffer sufficiently reliable evidence to support its factual assertions as to the scope of a defendant’s conspiratorial agreement” to count co-conspirators’ acts as part of the defendant’s “relevant conduct.” United States v. Booze, 108 F.3d 378, 381 (D.C.Cir.1997). Here the district court was “entitled to rely on the trial record references cited by the government.” Id. at 384. That evidence should easily allow us to uphold the trial court’s finding that Luther’s “relevant conduct” included the value of all of the goods flowing through the Mellen house. While the evidence may not fit the Homeric ideal of which the majority speaks, Maj. Op. at 185, I believe it is sufficient to conclude that the Mellens kept both their household and their conspiracy with “oneness of mind.”
For the foregoing reasons, I respectfully dissent from Part III.A of the majority opinion.

. Maj. Op. at 185.

.. Sentencing Tr., Aug. 5, 2003 [1:30 PM] at 32.

. An additional $140,000 worth of stolen property never passed through the Mellen residence.

. How the majority, facing these facts, can question “whether there is any evidence showing Luther's agreement in the broader aspects” of the conspiracy is beyond me. Maj. Op. at 186 n. 5 (emphasis in original). The evidence may be circumstantial but it is nonetheless undeniable. “[T]he law has no preference for direct evidence over circumstantial and often it is the latter that is the more reliable.” United States v. Spinner, 152 F.3d 950, 963 (D.C.Cir.1998) (internal citation omitted).

. The majority notes that the jury found Luther guilty of receiving stolen property "having a value of more than $1000.” Maj. Op. at 180. The verdict form included no specific property value on the conspiracy count. Id. The receipVstolen property count’s allusion to "more than $1000” merely tracks the language of 18 U.S.C. § 641 and indicates nothing about the jury’s view of the extent of Luther's involvement in the conspiracy. The jury was, however, in possession of the indictment. Trial Tr., November 6, 2002 [A.M.] at 148. The receiphstolen property count charged Luther with all of the property— $225,000 worth — that passed through the Mellen house during the conspiracy. Grand Jury Indictment at 32-34 (June 17, 1999). The conspiracy count charged that Luther and the other co-conspirators "willfully combined, conspired, confederated, and agreed with each other ... to defraud the United States” and described Luther’s involvement within the entirety of the conspiracy. Id. at 6-31.

. I do not, as the majority suggests, Maj. Op. at 184 n. 3, understand the district court's comment to equate knowledge with participation. Rather, I think the statement — "He knew of his wife's involvement in the scheme. I have no doubt about that whatsoever.”— was the court's shorthand finding, in light of all of the evidence it had heard throughout the trial, that Luther both knew about, and participated in, the conspiracy involving all of the goods that passed through the Mellen house.

. The jury may have found the testimony regarding Elizabeth’s effort to shield Luther from the full scope of the conspiracy lacking in credibility. Robert Sweeney testified that he was unable to comply fully with Elizabeth's instructions to conceal any goods delivered to the Mellen house "so Butch [Luther] would not be able to see them.” Trial Tr., October 29, 2002 [A.M.], at 58. Sweeney further testified that Elizabeth "didn't want anyone to know about the deliveries,” including Lewis Morgan. This instruction was — to put it mildly — improbable because, as Elizabeth well knew, Lewis Morgan helped Sweeney deliver the stolen goods. Id. at 59-60.

. See Trial Tr., October 28, 2002 [A.M.], at 91-108 (volume of goods found at Mellen home); Trial Tr., October 29, 2002 [P.M.], at 127-28 (goods placed in Elizabeth's sister's vehicle); Trial Tr., October 30, 2002 [A.M.], at 5-7 (distribution of two-way radios to Elizabeth's relatives); id. at 8-9 (retrieval of goods from Elizabeth's sister's vehicle); Trial Tr., October 30, 2002 [P.M.], at 43-45 (Luther and Elizabeth's discussion about two-way radios for personal use).

. Although I would affirm outright the district court's “relevant conduct” determination, I believe a remand should at least leave the trial court free to “spell out” that the $225,000 worth of stolen property that passed through the Mellen house was reasonably foreseeable to Luther.